## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANE ROSETSKY | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No. 07-cv-3167 |
| | : | |
| v. | : | |
| | : | |
| | : | Honorable Stewart Dalzell, J. |
| NATIONAL BOARD OF MEDICAL | : | |
| EXAMINERS OF THE UNITED STATES | : | |
| OF AMERICA, INC. | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

AND NOW comes Plaintiff, Diane Rosetsky, by and through her undersigned counsel, and files this Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment.

### I.    Introduction

Plaintiff, Diane Rosetsky, initiated this lawsuit to seek redress against Defendant, her former employer, for unlawful age discrimination, in violation of the Age Discrimination in Employment Act of 1967 and the Pennsylvania Human Relations Act.  Plaintiff, who was forty-seven when she was hired by Defendant, was systematically mistreated by her supervisor, Kathy Holtzman, while younger, less experienced employees, were given promotions.

Plaintiff's job description was contained in a "Role Profile".  This Role Profile was created by Plaintiff and by Ms. Holtzman.  Plaintiff did not make any changes to the Role Profile without Ms. Holtzman's permission.  In the Role Profile, Plaintiff's job responsibilities are

identified as primarily technical in nature. However, under Ms. Holtzman's supervision, Plaintiff was given mostly clerical tasks to perform, none of which were set forth in the Role Profile. Plaintiff described her work assignments as follows, "They primarily consist of your requests to me to: print out files and put them on your chair, Xerox articles and put them in your office, cut and paste in various word files, to file or keep track of various documents, and punching holes in final reports."

Plaintiff identified two younger employees, Kieran Hussie and Krista Albee, who were quickly moved into managerial positions above her, despite being no more qualified than Plaintiff.

On October 18, 2006, after being told by Ms. Holtzman that her role on a project was to cut and paste the work of Ms. Albee and Mr. Hussie, Plaintiff complained to Barbara Davidson in Defendant's Human Resources Department. Plaintiff specifically stated that she believed her employer was discriminating against her because of her age. Following this complaint, Plaintiff suffered retaliation by Ms. Holtzman. Ms. Holtzman required Plaintiff to reconstruct time records for a period of four or five months, instructed her not to talk to anyone (including HR) about her complaints, and became increasingly hostile to Plaintiff.

On November 16, 2006, Plaintiff wrote an email to Ms. Holtzman expressly complaining that younger, less experienced employees were being given preferential treatment. Plaintiff was fired eleven days later.

## II.   **Factual Background**

See Plaintiff's response to Defendant's Statement of Facts.

## III.    Legal Argument

### a.    *The Standard for Summary Judgment*

Federal Rule of Civil Procedure 56 and the authorities interpreting it have set a high standard for the granting of summary judgment – a standard Defendant simply cannot satisfy.

Pursuant to Fed.R.Civ.P. 56(c) summary judgment is appropriate only in cases "... where there is no genuine issue of material fact for the jury to decide." *Coolspring Stone Supply v. American States Life Ins. Co.,* 10 F.3d 144, 148 (3rd Cir. 1993). Summary judgment may be granted only when there is no dispute as to an issue of material fact and the moving party is entitled to judgment as a matter of law. In response to a motion for summary judgment, the nonmoving party must demonstrate the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505 (1986). The burden always remains on the moving party, however, to show that a rational trier of fact could not find for the non-moving party and that there is thus no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S. Ct. 1348 (1986). Defendants cannot meet that burden.

In ruling on a motion for summary judgment, the Court must accept and believe the evidence of the non-moving party (herein, the Plaintiff) as true, and must not weigh or consider the credibility of witnesses. *Anderson, supra,* 477 U.S. at 248-52. The non-moving party's evidence be believed as true on summary judgment, and any and all doubts must be resolved in that party's favor. *Eastman Kodak Co. v. Image Technological Services, Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 2076 (1992). On summary judgment, where the non-moving party's evidence contradicts the movant's evidence, then the non-movant's evidence must be taken as true. *Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3rd Cir. 1992), *cert. denied,* 507 U.S. 912, 113 S. Ct. 1262 (1993).

As will be demonstrated *infra*, Plaintiff has adduced ample evidence to allow her claims to proceed to trial.

**b.     *Plaintiff Has Established a Prima Facie Case of Age Discrimination***

As Plaintiff has adduced sufficient evidence during discovery to establish a *prima facie* case of age discrimination, Defendant's motion must be denied.  The Age Discrimination in Employment Act of 1967 (hereinafter "ADEA") prohibits discrimination against employees on the basis of their age.  "It shall be unlawful for an employer – to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  "In order to demonstrate a prima facie case of discrimination under Title VII, the ADEA, or the PHRA, an individual must show that he or she: (1) is a member of a protected class; (2) was qualified for the position sought; (3) was subject to an adverse employment action despite being qualified; and, (4) under circumstances that raise an inference of discriminatory action…" *Lula v. Network Appliance*, 2007 U.S. App. LEXIS 25901, *3 (3rd Cir. 2007).  In this case, Defendant does not challenge the first, second, or third prong of the *prima facie* test, but claims only that Plaintiff was not discriminated against because of her age, replaced by someone younger, or fired under circumstances that give rise to an inference of discrimination.  As set forth below, a genuine issue of material fact exists as to this issue, and Defendant's motion must therefore be denied.

In failing to provide Plaintiff with job assignments which matched her job Role Profile, Defendant took an adverse employment action against Plaintiff.  "The Supreme Court has defined a tangible, adverse employment action as a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change

in benefits.'" *Weston v. Pennsylvania*, 251 F.3d 420, 430-431 (3rd Cir. 2001), *citing Burlington*

*Indus. Inc. v. Ellerth*, 524 U.S. 742, 749, 118 S. Ct. 2257, 2268, 141 L. Ed. 2d 633 (1998).

> [A] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. *Galabya v. New York City Board of Education*, 202 F.3d 636, 640 (2d Cir. 2000). To be 'materially adverse,' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities; it might be indicated by a termination of employment, a demotion evidence by a decrease in wage or salary, a less distinguished title, a material loss of benefits, *significantly diminished material responsibilities* or other indices unique to a particular situation.

*Glanzman v. Metropolitan Management Corp.*, 290 F. Supp. 2d 571, 582 (E.D. Pa. 2003).

In the case at bar, Plaintiff's Role Profile identifies the following as Plaintiff's job responsibilities:

  a. Acts as liaison between manager and unit staff/in-house staff and outside customers/vendors, etc. to expedite completion of projects, disseminate information, etc.

  b. Builds/maintains databases, requiring the organizing and preparing of reports and documents that integrate several data sources, technology and software applications.

  c. Assists with management and/or monitoring of implementation of new technology, systems, and software within TDS to ensure successful transition and continued utilization.

  d. Tracks/compiles budgets, and other materials.  Assists in planning, developing procedures, etc.  Leads managers in development of subunit budgets consistent with annual NBME and Unit goals.

  e. Assists with development of processing routines to optimize operational test development activities, provide quality assurance, and/or facilitate decision-making.  Manages projects as assigned.

  f. Creates, updates, and/or disseminates documentation for new and existing procedures and routines; includes direct user support and training.  Collaborates with other units in the design and/or testing of new technology and software; serves as TDS advocate.

*See* Exhibit "C".

Plaintiff testified that she worked with Ms. Holtzman to create this Profile, and that she made no changes absent Ms. Holtzman's permission. The Profile does not make mention of clerical tasks. However, Plaintiff testified that she was compelled by Ms. Holtzman to perform these tasks almost exclusively. In an email to Ms. Holtzman, Plaintiff stated:

> The real issue is – that I have reviewed most of the e-mails between you and I over the last year. They primarily consist of your requests to me to: print out files and put them on your chair, Xerox articles and put them in your office, cut and paste in various word files, to file or keep track of various documents, and punching holes in final reports.
> None of the assignments have been appropriate for my skills, education and technological background – and frankly, have been insulting.

*See* Exhibit "E". This change, from a technical role to a clerical one is an adverse job action taken by Plaintiff's employer against her.

Plaintiff further testified that while she was relegated to a clerical role, younger employees, specifically Kieran Hussie and Krista Albee, were given far greater responsibilities, and were even given promotions without ever having to interview for them. While these employees may have had slightly different job titles, they can still be used as comparators for the purposes of the ADEA.

Defendant has claimed that Plaintiff was the only employee in her position. In *Smith v. Thomas Jefferson University*, 2006 U.S. Dist. LEXIS 45079 (E.D. Pa.), the court rejected an argument that employees with unique job titles cannot use employees with similar jobs as comparators. "Defendant asserts that because Plaintiff's administrative secretary position was unique within the Division, Plaintiff cannot demonstrate that other similarly situated employees were retained when her position was eliminated and hence, she cannot show that she was

terminated under circumstances that give rise to an inference of unlawful discrimination. The Court rejects Defendant's contention that plaintiffs who hold unique positions within their employers' organizations cannot demonstrate discrimination other than through direct proof." *Id.*, at *12. As such, although Mr. Hussie may have not held the precise position of Test Development Program Assistant, it is legally sufficient that he held a similar position and manifested similar skills to Plaintiff. As such, the Court may consider him a comparable employee for the purpose of establishing a *prima facie* case under the ADEA.

Accordingly, Plaintiff has established that while her job responsibilities were materially reduced to a clerical position, Ms. Hussie and Ms. Albee were advanced quickly through the company by Ms. Holtzman. As such, Plaintiff has established a *prima facie* case of age discrimination.

### c.       *Defendant has offered no legitimate, non-discriminatory reason to justify the reduction of Plaintiff's job responsibilities.*

Because Defendant has not set forth any legitimate, non-discriminatory reason for the material change in Plaintiff's job responsibilities, Plaintiff is not required to establish pretext. Under the familiar framework, as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). As the Third Circuit Court of Appeals has noted:

> Briefly summarized, the *McDonnell Douglas* analysis proceeds in three stages. First, the plaintiff must establish a *prima facie* case of discrimination. If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's [termination].[1] Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

---

[1] The *McDonnell-Douglas* analysis is couched in terms of denial of promotions, but is applied in the same manner to cases where, as here, the Plaintiff claims he was terminated for a discriminatory reason. *See, e.g., Jones v. City of Wilmington*, 299 F. Supp.2d 380, 394 n. 15 (D. Del. 2004) (applying *McDonnell-*Douglas in a firing case).

*Jones v. School Dist. of Philadelphia,* 198 F.3d 403, 410 (citing *McDonnell Douglas,* 411 U.S. at 802).  In this case, Defendant simply denies that Plaintiff can establish a case for pre-termination discrimination, but fails to offer any reason to justify its actions.  As such, there is no proffered explanation for Plaintiff to rebut.

> ### d.     *Plaintiff has established a prima facie claim for retaliation.*

Because Plaintiff was terminated shortly after making her complaints of age discrimination, she can establish a *prima facie* case for retaliation.  "To establish a prima facie case of retaliation under the ADEA, a plaintiff must aver three elements: first, that plaintiff engaged in a protected employee activity; second, that the employer took an adverse employment action after, or contemporaneous with, the protected activity; and third, that a causal link exists between the protected activity and the adverse action."  *Peters v. Air Products & Chemicals, Inc.*, 2006 U.S. Dist. LEXIS 15330, *18 (E.D. Pa. 2006).  In this case, the evidence is clear that Plaintiff complained about age discrimination, both to Ms. Davidson on October 18, 2006, and later to Ms. Holtzman on November 16, 2006.  Plaintiff was terminated on November 27, 2006.  By virtue of the short time between Plaintiff's complaint and her termination, a causal link connecting the two events can be established through temporal proximity.

While Defendant claims that Plaintiff failed to  make any complaints of age discrimination, Plaintiff has testified that she explicitly told Ms. Davidson that she was being subjected to age discrimination.  Viewing all evidence in the light most favorable to Plaintiff, this testimony has to be accepted.  In addition, in her November 16, 2006 email to Ms. Holtzman, Plaintiff stated:

> It appears that other people, *some younger and with less education and experience*, are being hired into the organization in positions that are higher than Production Assistant – such as editors and test

> development associates.  Some are being promoted without having
> to apply for position.  They were not required to work their way up
> and start as Program Assistants.

Exhibit "J".  This email is sufficient to constitute a protected activity under the ADEA.

Defendant does not appear to contest the fact that Plaintiff suffered from an adverse job action following her complaints of discrimination and certainly, termination is an adverse job action.

Finally, since Plaintiff was terminated approximately one month after complaining to Ms. Davidson, and less than two weeks after her email to Ms. Holtzman, Plaintiff can establish causation through temporal proximity.  "[T]emporal proximity may provide an evidentiary basis from which an inference of retaliation can be drawn" by the factfinder."  *Moore v. City of Philadelphia*, 461 F.3d 331, 352 (3rd Cir. 2006).  In cases where the adverse job action occurs rapidly after the protected activity, temporal proximity is sufficient to establish causation.  *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3rd Cir. 1989).  In this matter, a mere eleven days elapsed between Plaintiff's email to Ms. Holtzman and her termination.  Such a brief period of time is more than sufficient to establish a temporal proximity.

Plaintiff can also establish causation through the pattern of antagonism by Ms. Holtzman following Plaintiff's complaint to Ms. Davidson.  Plaintiff may establish causation through "a pattern of antagonism coupled with timing."  *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3rd Cir. 2007).  In this matter, Plaintiff testified that, shortly after meeting with Ms. Davidson, she was ordered by Ms. Holtzman to recreate time records for the past four or five months.  Plaintiff viewed this assignment as retaliatory because it was impossible and Plaintiff made numerous, contemporaneous complaints through the Values Hotline informing Defendant she was being retaliated against for having complained to Ms. Davidson.  In light of this, there is sufficient

evidence  Plaintiff was subjected to a pattern of antagonism following her initial complaints to Ms. Davidson, as well as significant temporal proximity following her email to Ms. Holtzman. Accordingly, there exists a genuine issue of material fact as to the issue of causation.

       e.      ***Plaintiff can demonstrate that Defendant's proffered reason for her termination is pretextual.***

      In this matter, there is more than sufficient evidence that the proffered reason for Plaintiff's termination was pretextual.

> [A] plaintiff who has made out a prima facie case may defeat a motion for summary judgment by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.  Thus, if the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case.

*Fuentes v. Perskie*, 32 F.3d 759, 764 (3rd Cir. 1994).  In order to discredit the employer's proffered reasons for taking an adverse job action, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence'." *Id.*, at 765.

      Defendant claims Plaintiff was terminated for insubordination but Defendant offers no factual testimony (or affidavits of decision-makers) stating exactly what these specific acts of insubordination were.   While Defendant includes with its motion an Affidavit of Barbara Davidson, that affidavit does not establish the precise reason for Plaintiff's termination. Similarly, the letter sent to Plaintiff regarding her termination states only:

> Your communications to your supervisor and me over the past few weeks make it clear that you are not interested in performing the

> duties of Program Assistant as defined by the NBME.  The job that
> you proposed in your email of November 22, 2006, is not available
> and will not be offered to you.   As such, effective Friday
> December 1, 2006, your employment with the NBME is
> terminated.

(November 27, 2006 memo to Plaintiff, attached hereto as Exhibit "M").  This memo, however,

fails to address the fact that Plaintiff had made it very clear that she did wish to perform her job

duties, as defined by her Role Profile.  Plaintiff had merely been expressing her frustration with

Defendant's refusal to permit Plaintiff to perform her job, as it had been defined by the employer

itself.  It was this fact that Plaintiff was trying to explain in her email of November 22, 2006, in

which she stated:

> You really need to re-read my role profile – which is not the one
> you brought to HR.  You have not given my any assignments that
> match this profile.  I have created assignments that are appropriate
> and innovative for the department on my own – and have been
> penalized for it.
>
> There is nothing in my role profile about clerical work.

Exhibit "K".    Defendant now deliberately misconstrues, as insubordination, Plaintiff's

straightforward attempt to obtain a correct clarification of her job duties.

Defendant also mischaracterizes Plaintiff's failure to provide the breakdown of her time

as insubordination.   However, as Plaintiff testified, such a request was impossible to fulfill.

Plaintiff was being asked to recreate her time records from months ago.  The fact that Plaintiff

identifies this demand as evidence of retaliation clearly casts doubt on its probability as an act of

insubordination.   Under Defendant's theory, Plaintiff could have been given any number of

frivolous and impossible tasks, and then fired for failing to complete them.

Defendant has not produced any evidence that Plaintiff ever declined a job assignment or

refused to perform any task given to her.  In fact, Plaintiff testified that she did every task that

Ms. Holtzman assigned to her.  Defendant also points to an email that was not sent to anyone at NBME, and attempts to speculate what Plaintiff's motivations might have been in sending that email.  Such speculation is improper for purposes of summary judgment.

Plaintiff has presented evidence that Defendant's proffered reason for termination – insubordination – is not worthy of credence.  As such, Plaintiff can establish facts that would lead to the conclusion that such excuse was merely a pretext to mask the retaliatory reason for Plaintiff's termination.  Consequently, Defendant's motion must be denied.

> **f.      As the PHRA waived its right to conduct an investigation, Plaintiff did not fail to exhaust her administrative remedies.**

Since the PHRA affirmatively stated that it would not be conducting any investigation, Plaintiff did not fail to exhaust her administrative remedies by filing this matter in court. Plaintiff filed her EEOC and PHRA claims on or about November 29, 2006.  On February 5, 2007, the PHRA issued a letter stating that the agency had waived it right to investigate the claim, and that the PHRC would not be taking any further action on the complaint.  (February 5, 2007 letter, attached hereto as Exhibit "M").  Subsequently, on May 7, 2007, the EEOC closed its investigation and issued a notice of right to sue.  (Attached hereto as Exhibit "N").

Defendant argues that Plaintiff's PHRA claim should be dismissed because one year did not elapse between the filing of the charge and the filing of the Complaint.  Such an argument, however, ignores the fact that the PHRC was not conducting any investigation and, as such, the PHRC would never have recommended any administrative remedy.  Defendant's "form before function" argument also ignores the significant precedent that a dismissal with prejudice is not the proper remedy for the bringing of a premature PHRA claim.  *See McGovern v. Jack D's, Inc.*, 2004 U.S. Dist. LEXIS 1985 (E.D. Pa.) (Antwerpen, J.); *Padgett v. Y.M.C.A.*, 1998 U.S. Dist. LEXIS 18693 (E.D. Pa.) (Powell, J.), *McBride v. Bell of Pennsylvania*, 1989 U.S. Dist. LEXIS

7177 (E.D. Pa.) (Kelly, J.) *Reid v. Kraft General Foods*, 1995 U.S. Dist. LEXIS 5595 (E.D. Pa.) (Padova, J.), *Esmonde v. TV Guide Magazine*, 1992 U.S. Dist. LEXIS 3912 (E.D. Pa.) (Pollack, J.).[2]  In each of these cases, the court held that the proper remedy was to dismiss the case without prejudice, with leave to refile once the PHRC had closed its case.  In *Kozlowski v. Extendedicare Health Services*, 2000 U.S. Dist. LEXIS 1493, *15 (E.D. Pa.) (Yohn, J.), the court dismissed the plaintiff's PHRA claim (with leave to refile), stating, "The plaintiff filed her initial complaint in this suit just over five months after the filing of her administrative complaint with the PHRC.  In doing so, she refused to give the PHRC the opportunity to resolve her complaint through conciliation and failed even to make a good faith attempt to exhaust her remedies as required by the PHRA." *Id.*, at *15).  *See also Schweitzer v. Rockwell Int'l*, 402 Pa. Super. 34, 586 A.2d 383 (Pa, Super. 1990) ("Invocation of the procedures set forth in the [PHRA] entails more than the filing of a complaint; it includes the good faith use of the procedures provided for disposition of the complaint.")  In *Atkinson v. Lafayette College*, 2002 U.S. Dist. LEXIS 1432 (E.D. Pa.) (Buckwalter, J.), the court refused to dismiss a claim under the PHRA that was filed prior to the expiration of the one-year period, holding that the Plaintiff had not demonstrated a lack of good faith use of the PHRA administrative process.

In this matter, Plaintiff received notice that the PHRC was not conducting any investigation, and would not be taking any additional action regarding Plaintiff's claims. Plaintiff then faced a strict time frame on her pending notice of right to sue from the EEOC and was required to file her complaint prior to the expiration of a one-year period from the initial date of filing or lose all of her federal remedies.  The fact that Plaintiff filed her complaint in

---

[2] In *Lantz v. Hospital of the University of Pennsylvania*, 1996 U.S. Dist. LEXIS 11154 (E.D. PA.) (Bechtle, J.), a case cited by Defendant in its brief, the court never had to address the appropriate remedy, as, in that case, there was an issue of fact as to the whether the PHRC ever received and docketed a claim.  Such is clearly not the case in this matter, as the PHRC has acknowledged receiving all Plaintiff's claims and waived its rights to investigate each.

federal court should not deprive her of her rights to seek state remedies, especially in light of the fact that the PHRC was never going to issue any remedy or decision.

> **g.**     ***Plaintiff did not commit any fraud in her application.***

Plaintiff did not misrepresent anything on her application with Defendant. Plaintiff stated that she had been terminated from the University of Pennsylvania when the position was eliminated. This was consistent with what Plaintiff was told by her supervisor when she was let go. As such, Plaintiff was truthful in her application, and did not commit any fraud. Had Defendant asked Plaintiff of this fact, they would have heard Plaintiff's explanation, and could not have justified any termination.

With respect to the documents on her computer, Plaintiff testified that she took the documents home in order to work from home, and that Ms. Holtzman was aware of this fact. As such, Plaintiff did not violate any policy of NBME. While Plaintiff did not delete these files when she was fired, Plaintiff testified that the files were comprised of nothing more that "obsolete slides". In addition, while Defendant submits an affidavit stating that Plaintiff could have been fired for "dishonesty on one's application", Defendant offers no such claim with regard to the documents on Plaintiff's "thumb drive". As such, there is no evidence on the record to support a claim that Plaintiff would have been terminated for failing to delete old files from her computer had she still been working for Defendant. As such, Plaintiff's claim for back pay should not be cut off.

> **h.**     ***Plaintiff is entitled to damages for pain and suffering under the PHRA***

Assuming that Plaintiff's claims under the PHRA are sustained, Plaintiff is entitled to an award of damages for pain, suffering, and humiliation. Pursuant to 43 P.S. §959(f)(1), damages

under the PHRA include, "damages caused by humiliation and embarrassment." Accordingly, Plaintiff's claim for such non-economic damages was proper.

**IV.**     <u>**Conclusion**</u>

In light of the foregoing, Plaintiff, Diane Rosetsky, respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment in its entirety.

Respectfully submitted,

TIMOTHY M. KOLMAN AND ASSOCIATES

By:     /s/ Rufus A. Jennings
Rufus A. Jennings, Esquire
Pennsylvania Bar Identification No. 93030
225 North Flowers Mill Road
Langhorne, PA 19047
Phone: (215) 750-3134
Attorney for Plaintiff

December 10, 2007