IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANE ROSETSKY | : | CIVIL ACTION |
| Plaintiff, | : | No. 07-cv-3167 |
| v. | : | |
| | : | Honorable Stewart Dalzell, J. |
| NATIONAL BOARD OF MEDICAL EXAMINERS OF THE UNITED STATES OF AMERICA, INC. | : | |
| Defendant. | : | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF FACTS

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted. By way of further response, when Plaintiff's employment with the University of Pennsylvania ended, Plaintiff was told by her supervisor that Plaintiff's position was being changed, as the supervisor was no longer interested in somebody doing databases or technical work. (Deposition of Diane Rosetsky, attached hereto as Exhibit "A", at p. 20). Plaintiff was also told that she was overqualified in the position. (Exhibit "A", at p. 22). Plaintiff was not replaced in her position. (Exhibit "A", at p. 19).

8. Admitted.

9. Admitted in part, denied in part. It is admitted that there are some differences between two versions of Plaintiff's resume. It is specifically denied that such differences are material.

10. Admitted.

11. The documents produced speak for themselves. By way of further response, Plaintiff testified that, after she moved back to her parents' house, the commute was too far and that she didn't like driving. (Exhibit "A", at p. 32).

12. Admitted.

13. It is admitted only that Plaintiff was aged forty-seven when she was hired by Defendant. As to the age of Ms. Holtzman, Plaintiff is without any information to admit or deny this fact, and Defendant has not provided any supporting documentation as to Ms. Holtzman's age.

14. It is admitted only that the document from Defendant's intranet states that Role Profiles are a "work in progress".

15. Denied. The tasks specifically identified in the Role Profile for the position of Temporary Test Development Associate I are:

   a. Creates, updates, and/or disseminates documentation for new and existing technological procedures and routines; includes direct user support and training.

   b. Designs and incorporates interactive help features including wizards (smart guides), help screens, FAQ's, and tips and tricks making applications more user friendly.

   c. Assists with examination production of assigned programs; translation of items for international examinations, CBT and web-based examinations, ATA, resources files, paper and pencil publishing, and pictorial production.\

   d. Works with staff across units to create and disseminate TD program plans.
   e. Assists in cataloging multimedia for use in test questions.

   f. Assists in creating and cataloging slides for presentations and workshops.

    g.  Assist with other duties as assigned.

(Temporary Test Development Associate I Role Profile, attached hereto as Exhibit "B"). It is specifically denied that Plaintiff was expected to perform clerical tasks in support of her supervisor, and Defendant has failed to point to any fact of record in support of this allegation.

By way of further response, Plaintiff testified that she was never given the opportunity to assist with examination production; translation of items for international examinations, CBT, and web based exams; that she was never permitted to create slides, only to organize them for Ms. Holtzman. (Exhibit "A", at pp. 77-78). Plaintiff further testified that, as a Test Development Associate, she organized contracts in binders for Ms. Holtzman; typed for Ms. Holtzman; fixed Excel charts; and performed clerical tasks for Ms. Holtzman. (Exhibit "A", at pp. 78-79). Plaintiff stated that the only task that she performed that was in line with her job description was the creation of a registration sign-on database. (Exhibit "A", at p. 78).

16.    Denied. Defendant has failed to point to any fact of record in support of this allegation.

17.    Denied. The Role profile for Plaintiff's position of Test Development Program Assistant speaks for itself, and identifies the following as Plaintiff's job responsibilities:

    a.  Acts as liaison between manager and unit staff/in-house staff and outside customers/vendors, etc. to expedite completion of projects, disseminate information, etc.

    b.  Builds/maintains databases, requiring the organizing and preparing of reports and documents that integrate several data sources, technology and software applications.

c. Assists with management and/or monitoring of implementation of new technology, systems, and software within TDS to ensure successful transition and continued utilization.

d. Tracks/compiles budgets, and other materials. Assists in planning, developing procedures, etc. Leads managers in development of subunit budgets consistent with annual NBME and Unit goals.

e. Assists with development of processing routines to optimize operational test development activities, provide quality assurance, and/or facilitate decision-making. Manages projects as assigned.

f. Creates, updates, and/or disseminates documentation for new and existing procedures and routines; includes direct user support and training. Collaborates with other units in the design and/or testing of new technology and software; serves as TDS advocate.

(Test Development Program Assistant Role Profile, attached hereto as Exhibit "C"). Defendant has failed to point to any fact of record in support of the allegation that Plaintiff removed any "assist" tasks from this profile. Defendant has also failed to point to any facts of record in support of the allegation that "all NBME employees, not just plaintiff, are expected to perform all of the job-related and support tasks assigned by his or her supervisor, whether or not they were expressly designated in a Role Profile." As such, these allegations are specifically denied as unsupported by the factual record.

18. Admitted.

19. Denied. While the emails attached by Defendant speak for themselves, Plaintiff specifically denies that her interactions with members of the NBME staff became abrasive and unprofessional. In fact, Kathy Holtzman's April 11, 2006 email to Plaintiff makes it clear that Ms. Holtzman agreed with Plaintiff's issues with Erik Sojka. Ms. Holtzman wrote, "Just sit tight, okay? That means don't walk around discussing this with others and for now, don't get Dave involved. We may need to do

       that ultimately, but I would like for the two of us to strategize first, okay?" (April 11, 2006 email to Diane Rosetsky, attached hereto as Exhibit "D"). Plaintiff also explained that she referred to one employee as the "guy with the little white hot pants" because "there was a guy that I didn't know who he was down in the – we have a gymnasium, and he came into the gym wearing little short white pants. And it was really inappropriate, and he kind of, like, laid down in front of me on a ball and was stretched backwards." (Exhibit "A", at p. 196).

20.   Denied. Plaintiff testified that she still had resumes pending from other places from before she was hired by Defendant. (Exhibit "A", at p. 236). Plaintiff further testified that she did not start thinking about leaving Defendant's employment until October, 2006. (Exhibit "A", at p. 237).

21.   Admitted. By way of further response, the tasks described by Plaintiff in her resume accurately reflect the job responsibilities set forth in the Role Profile for her position. (*See* Exhibit "C").

22.   Denied. Plaintiff testified that her mid-year evaluation was good. (Exhibit "A", at p. 147). Plaintiff further testified that, although she was supposed to select the individuals who would give her feedback on her evaluation, Ms. Holtzman actually selected these individuals instead. (Exhibit "A", at p. 148). Plaintiff also stated that she thought there may have been an issue with either Leslie or Debbie, members of the IT department who were not even supposed to be evaluating Plaintiff. (Exhibit "A", at pp. 148, 150).

23.   Admitted.

24.   Admitted. By way of further response, Plaintiff identified two employees, both under the age of forty, who were promoted. Plaintiff further identified one employee,

Kieran Hussie, who was promoted to a managerial position without even having to interview. (Exhibit "A", at p. 125).

25. Admitted. Plaintiff testified that she withdrew this application after Ms. Holtzman told the hiring employees not to hire Plaintiff. Plaintiff decided to withdraw her application rather than interview for a position she knew she would not receive. (Exhibit "A", at pp. 287-288).

26. Admitted. All of the job tasks identified by Plaintiff were consistent with the responsibilities identified in her Role Profile.

27. Denied. When asked if learning those programs was within her Role Profile, Plaintiff stated, "Not exactly those programs, but it kind of said, 'ability to review new applications and decide if they could be used in Test Development.'" (Exhibit "A", at p. 105).

28. Denied. When Plaintiff was asked whether she would perform tasks not included in her Role Profile, she responded, "Whatever Kathy would ask me to do I did." (Exhibit "A", at p. 94). Plaintiff further testified that she was excluded from doing anything on her Role Profile and "basically wound up intermittently doing the databases or doing – fixing typos for other people, Xeroxing for other people." Plaintiff stated, "I wasn't given the work that was on my job description." Exhibit "A", at pp. 94-95).

29. Admitted.

30. Admitted. Plaintiff testified that Faith (who was Ms. Holtzman's assistant) performed clerical work, along with the production assistants. (Exhibit "A", at pp. 81-82).

31. Admitted.

32. Admitted.

33. Denied. Defendant has failed to point to any fact of record in support of these allegations.

34. Denied. Plaintiff testified that she believed that Ms. Holtzman had been promoted to the point of her incompetence. Plaintiff further stated, "Just because you're at the job for a length of time, you know, does not mean that you're doing it right … I'm not going to say that she's in the position that she was in because she was the best person for the job." (Exhibit "A", at pp. 108-109). Plaintiff also stated, "I never said any of this to Kathy." (Exhibit "A", at p. 109). With regard to Ms. Holtzman, Plaintiff also referenced the fact that Ms. Holtzman had been sent to an executive coach named Kenny due to her own problems. (Exhibit "A", at p. 109).

35. Admitted.

36. Admitted.

37. Admitted.

38. Admitted.

39. Admitted.

40. Denied. Plaintiff testified that, had she been given the chance, she could have learned Dreamweaver very quickly. Plaintiff also testified that she believed that she had more technological skills than Mr. Hussie. (Exhibit "A", at p. 154).

41. Admitted.

42. Denied as stated. Plaintiff testified that she did not believe that the last three people before her had the position of Test Development Program Assistant. Plaintiff further testified that the Role Profile for her position was written by both Plaintiff and Ms.

Holtzman and that Plaintiff "was not allowed to change anything without her okay." (Exhibit "A", at pp. 89-90).

43. Denied as stated. Plaintiff was asked by a co-worker to edit hundreds of slide tutorials. When Plaintiff completed that task, Ms. Holtzman became enraged that Plaintiff had even been given the task, and told Plaintiff that Plaintiff was "'only supposed to be cutting and pasting other people's editing, like [Plaintiff] was supposed to be fixing typos and then cutting and pasting it into the tutorial." (Exhibit "A", at pp. 103-104). Ms. Holtzman did not edit Plaintiff's work. On the contrary, Plaintiff was given the task of editing Ms. Holtzman's work. Plaintiff was told that her editing was superior to Ms. Holtzman's. (Exhibit "A", at p. 106).

44. Admitted.

45. Denied. Plaintiff affirmatively stated that she believed that Ms. Holtzman was treating her differently from younger employees. Plaintiff testified that she told Ms. Davidson, "I met with her several times. And I said, 'Can't you see what she's doing here? We're all the older women that are stuck in this position.' And then I said, 'This is age discrimination.'" (Exhibit "A", at p. 306).

46. Denied. While Plaintiff did ask some employees to compare her work to that of Ms. Holtzman, Plaintiff did not tell anybody which work belonged to each person. (Exhibit "A", at p. 266).

47. Denied. When asked, "Is it fair to say that you were the only one who was engaging in that type of conduct?", Plaintiff responded, "No, it's not fair to say." (Exhibit "A", at pp. 265-266).

48. Denied. The email string attached by Defendant was actually commenced by Ms. Holtzman. Ms. Holtzman stated to Plaintiff that her role was to "streamline the

correction process by doing the cut and paste work after Krista, Kathy, and I edited the video text to make it easier for Keiran to finalize the product." (October 22, 2006 email to Plaintiff, attached hereto as Exhibit "E", at p. 2). In response, Plaintiff set forth her concerns about the tasks she had been given by Ms. Holtzman:

> The real issue is – that I have reviewed most of the e-mails between you and I over the last year. They primarily consist of your requests to me to: print out files and put them on your chair, Xerox articles and put them in your office, cut and paste in various word files, to file or keep track of various documents, and punching holes in final reports.
> None of the assignments have been appropriate for my skills, education and technological background – and frankly, have been insulting.

(Exhibit "E", at p. 1)

Plaintiff further stated:

> In your failure to acknowledge my capabilities, I have felt very frustrated for the last several months. I showed my resume to Krista and Kathy Angelucci, hoping that I could move into the Test Development Associate position that was opened. For this you insulted me, insisting I was "bragging" about how smart I was, that I had a Master's degree and formal computer training, etc.

(Exhibit "E", at p. 1). Plaintiff forwarded these emails to Barbara Davidson, stating:

> I am sending this to you so you will not (sic) what continues to transpire up here. This letter by me is in response to a letter sent {below} by Kathy – to me, on Monday morning. I really felt it was time to confront my treatment here - because at this point I feel I have nothing to lose.

(Exhibit "E", at p. 1).

49. Denied as stated. Plaintiff complained to Ms. Davidson about the way she was being treated by Ms. Holtzman, not her dislike of her supervisor. As noted above, Plaintiff had complained to Ms. Davidson that she believed that she was treated differently than younger employees.

50. Denied. While the emails attached by Defendant speak for themselves. Defendant have not pointed to any fact of record as to Ms. Holtzman's intent in sending such email.

51. Denied. Plaintiff testified that when she first tried to meet with Ms. Holtzman, Ms. Holtzman stated, "I don't want to talk to you." (Exhibit "A", at p. 261).

52. Admitted. As noted by Defendant, this email was sent to a friend who was not an employee of Defendant.

53. Admitted in part, denied in part. It is admitted that Plaintiff was assigned to two database projects. As noted by Krista Albee in her email to Ms. Holtzman, this project was given to Plaintiff due to Plaintiff's "extensive expertise with Access". (October 25, 2006 email to Kathy Holtzman, attached hereto as Exhibit "F"). In her email to Plaintiff, Ms. Holtzman acknowledges that Connie Murray was "quite pleased" with the work that Plaintiff had been doing. (*See* Exhibit "F"). With regard to Ms. Holtzman's request that Plaintiff track her time, Plaintiff testified:

> After I had worked on this database, she wanted me to break down what I had done in the past four or five months on each thing after the fact. You know, then she decided, "Okay. When you built this database, how much time did you spend on user interface? How much time did you spend cleaning up the Power Point slides?" After everything was almost done, then she's asking me to backtrack, and I said, "I can't do that. It's impossible.

(Exhibit "A", at pp. 282-283). Plaintiff further stated, "I couldn't do it honestly is what I thought. I could never have done it. It was impossible." (Exhibit "A", at p. 283). Plaintiff believes that this request was harassment. (Exhibit "A", at p. 282).

54. Admitted. Plaintiff believed that the request was impossible to complete. (Exhibit "A", at p. 283).

55. Admitted.

56. Admitted. Plaintiff testified that Ms. Holtzman complained that Plaintiff had contacted HR with her concerns. (Exhibit "A", at p. 295).

57. Admitted. By way of further response, Plaintiff stated her reasons for this request, including being belittled by Ms. Holtzman and being given clerical tasks.

58. Admitted.

59. Admitted. By way of further response, in her email to Ms. Davidson, Plaintiff stated, "This is retaliatory harassment for my involving your department." (November 9, 2006 email to Barbara Davidson, attached hereto as Exhibit "G"). Ms. Davidson did not refute this claim. Plaintiff further stated:

> I have been doing my work – she has been interrupting me since this all started with lengthy e-mails – and requests for project plans for things I have already completed or am in the midst of – which she ignored the whole year. She is also wasting my time with charts so she can make pretend I'm on some sort of disciplinary action.

(Exhibit "G").

60. Denied as stated. After receiving the November 7, 2006 email from Ms. Holtzman, Plaintiff spoke to Faith Balsama and Debbie Shelmire after they were called into Ms. Holtzman's office. Plaintiff was told that Ms. Holtzman had asked them to "sign off and write bad things about [her], and they refused. SO I did somewhat talk to them about what was going on. Kathy tried to get them to write negative things about me, and they both refused." (Exhibit "A", at p. 243).

61. Denied as stated. It is admitted only that Plaintiff sent the November 8, 2006 email to Ms. Balsama.

62. Denied. Plaintiff testified that while other people used terms like "witch" to Ms. Holtzman in person, Plaintiff was "completely respectful to her" and "never called her any names". (Exhibit "A", at p. 292).

63. Admitted.

64. Admitted. Each of the complaints filed through Defendant's Values Hotline make reference to retaliation for complaining to Human Resources. (*See* Values Hotline forms, attached hereto as Exhibit "H").

65. Admitted. Plaintiff stated to Ms. Holtzman and Ms. Davidson that she believed that she was being retaliated against for complaining to Human resources. (November 14, 2006 email, attached hereto as Exhibit "I").

66. Admitted. Plaintiff also stated in her email:

> It appears that other people, *some younger and with less education and experience*, are being hired into the organization in positions that are higher than Production Assistant – such as editors and test development associates. Some are being promoted without having to apply for position. They were not required to work their way up and start as Program Assistants.
> I would appreciate a more specific explanation as to why I am not qualified in your department for any other position than Program or Production Assistant.

(November 11, 2006 email to Kathy Holtzman, attached hereto as Exhibit "J").

67. It is admitted only that Plaintiff did forward the email and that she did so for the reasons to which she testified. Defendant has failed to point to any fact of record to support its allegation that Defendant has any policy about threats of violence.

68. Admitted.

69. Admitted.

70. Admitted.

71. Admitted.

- 12 -

72. Admitted.

73. Admitted.

74. Admitted in part. Plaintiff stated that she would no longer perform the work that she was criticized for doing. (Exhibit "A", at p. 234). In her email, Plaintiff notes:

> You really need to re-read my role profile – which is not the one you brought to HR. You have not given my any assignments that match this profile. I have created assignments that are appropriate and innovative for the department on my own – and have been penalized for it.
>
> There is nothing in my role profile about clerical work.

(November 22, 2006 email to Kathy Holtzman, attached hereto as Exhibit "K").

75. Denied. Defendant has failed to point to any fact of record in support of this allegation. Plaintiff admits only that her employment with Defendant was terminated only eleven days after her email to Ms. Holtzman stating that younger employees were given chances that Plaintiff was not. (*See* Exhibit "J").

76. Denied. Defendant has failed to point to any fact of record in support of this allegation.

77. Admitted.

78. Admitted.

79. It is admitted only that Plaintiff did retain "obsolete slides" that she worked on from home. (Exhibit "A", at pp. 141, 214). Plaintiff testified that Ms. Holtzman knew that Plaintiff worked on these projects from home. (Exhibit "A", at p. 141).

80. Admitted.

81. Admitted.

82. Denied. Defendant has failed to point to any fact of record in support of this allegation.

83. Admitted.

84. Admitted.

85. Denied. Defendant has failed to point to any fact of record in support of this allegation.

86. Admitted in part, denied in part. It is admitted that Plaintiff filed her Complaint on August 2, 2007. Plaintiff disputes that the allegations contained in Paragraph 18(b) have been withdrawn. Plaintiff was denied positions for which she was qualified. As noted above, after she applied for the positions, Ms. Holtzman openly advised the interviewers that they should not hire Plaintiff.

87. Admitted.

                Respectfully submitted,

                TIMOTHY M. KOLMAN AND ASSOCIATES

By: /s/ Rufus A. Jennings, Esquire
Rufus A. Jennings, Esquire
Pennsylvania Bar Identification No. 93030
225 North Flowers Mill Road
Langhorne, PA 19047
Phone: (215) 750-3134
Attorney for Plaintiff

December 6, 2007